IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| *v*. | : | CRIMINAL NO. |
| | : | NO. 1:12-cr-286-WSD |
| JONATHAN CHRISTOPHER BRANCH | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Comes now the United States of America, by Sally Quillian Yates, United States Attorney for the Northern District of Georgia, and Richard S. Moultrie, Jr. and Phyllis Clerk, Assistant United States Attorneys for the Northern District of Georgia, and submits the following Sentencing Memorandum to address certain applications of the United States Sentencing Guidelines Manual included in Defendant's Presentence Report.  First, the Court should calculate a base offense level of 30 in the Defendant's case pursuant to United States Sentencing Guidelines Sections 2X1.1 and 2G1.3(a)(2), as the Pre-sentence Report now provides.  Second, the parties agree that the Defendant's sentence should not be enhanced for undue influence of a minor under Section 2G1.3(b)(2)(B) of the Guidelines.  Third, the Court should award the Defendant a downward departure of four levels under Section 3B1.2 (a) of the Guidelines because his role in the offense was that of a minimal participant.  Finally, the Government urges

1

the Court to apply a two-level enhancement for use of a computer to solicit persons to engage in unlawful sex acts with a minor under Section 2G1.3(b)(3)(B) of the Guidelines.

## I.
## INTRODUCTION

First, the Court should calculate a base offense level of 30 in Defendant Jonathan Christopher Branch's ("Branch") case under Sections 2X1.1 and 2G1.3(a)(2) of the Guidelines, as the Pre-sentence Report provides. Branch pleaded guilty to conspiracy to commit child sex trafficking, in violation of Title 18, United States Code, Section 1594(c). Because there is no Guideline that expressly covers this conspiracy offense, Section 2X1.1 of the Guidelines requires that the Court apply the base offense level for Branch's substantive conduct under Section 2G1.3(a)(2).

Second, the parties agree that Branch's sentence should not be enhanced for undue influence of a minor under Section 2G1.3(b)(2)(B). According to the minor victim in this case, Branch had limited involvement with her, unlike Co-defendants Fabian Terran Murray ("Murray") and Richard Douglas King ("King"). The facts of the case, therefore, do not demonstrate that Branch's role in the offense compromised the voluntariness of the minor. For similar reasons,

the Government is recommending that the Court depart four levels under the Guidelines based on Branch's minimal role in the offense under Section 3B1.2 (a).

Finally, the Court should apply an enhancement under Section 2G1.3(b)(3)(B) of the Guidelines because the offense involved use of a computer or interactive computer service to entice, encourage, offer or solicit a person to engage in prohibited sexual conduct with a minor. In this case internet advertisements were used to solicit clients for J.B. and customers called M.M.'s, King's girlfriend, cell phone to arrange dates with J.B.. As a result, the plain language of the Guidelines applies here because internet ads were used to solicit clients for the purpose of engaging in prohibited sexual conduct with J.B., a minor.

## II.
## PROCEDURAL BACKGROUND

**A. Indictment and Guilty Plea.**

On August 28, 2012, a grand jury seated in the Northern District of Georgia returned an indictment charging Branch, along with Murray and King, aided and abetted by each other and M.M., King's girlfriend, an unindicted co-conspirator, with the offenses of conspiring to commit, and commission of, sex trafficking of a minor, in violation of Title 18, United States Code, Section 1594(c), 1591 (a)(1), and 2. (Doc. 1.) On October 16, 2013, Branch pleaded guilty to conspiracy to

commit child sex trafficking as alleged in Count One of the indictment. (Doc. 70) As part of his plea agreement with the Government, the Government agreed to recommend that Branch receive a four-level downward departure for a mitigating role in the offense under Section 3B1.2(a) of the Guidelines. (Doc. 70- at 13.)

### B. The Pre-sentence Report.

On July 25, 2014, the United States Probation Office issued its *Final* Pre-sentence Investigation Report ("PSR") in Branch's case. (PSR.) The PSR relied upon the 2013 edition of the United States Sentencing Guidelines Manual ("U.S.S.G." and the "Guidelines"). (PSR at ¶ 18.) The PSR determined that the applicable sentencing guideline is Section 2G1.3(a)(2), imposing a base offense level of 30. (PSR at ¶ 19.) The probation officer recommended an upward adjustment of two levels for undue influence of a minor under Section 2G1.3(b)(2)(B); an upward adjustment of two levels because the offense involved the use of a computer to solicit persons to engage in prohibited sexual contact with a minor under Section 2G1.3(b)(3)(B); and an upward adjustment of two levels because Branch's offense involved a commercial sex act under Section 2G1.3(b)(4)(B). (PSR at ¶¶ 20-22.)

The probation officer also applied a two-level downward departure for the role in the offense under Section 3B1.2(b). (PSR at ¶ 25.) This resulted in an adjusted offense level of 34. (PSR at ¶27.)

Last, the PSR applied a downward departure of three levels based on Branch's acceptance of responsibility under Sections 3E1.1(a) and (b), resulting in a total offense level of 31. (PSR at ¶ 29.) The PSR also determined that Branch's Criminal History Category is a Category III. (PSR at ¶ 37.)

### III.
### BRIEF STATEMENT OF THE CASE

In late May 2012, J.B. met Branch, Murray, and King after leaving the custody of New York's Adult and Children Services. (PSR ¶¶ 10, 11.) J.B. had come to Atlanta, Georgia, from South Carolina with a man named "Blue" who began sex trafficking J.B. in the Marietta and Smyrna, Georgia, areas. (PSR at 10.) King and Murray took J.B. to a Ramada Inn in Marietta, Georgia and subsequently to an apartment complex on Six Flags Drive in Austell, Georgia (PSR ¶¶ 11-12.) After arriving at the apartment, Murray bought J.B. provocative clothing and told her she would be working for him as a prostitute. (PSR at 12). Murray and King then caused J.B. to commit sex acts on Fulton Industrial Boulevard, at an interstate highway truck stop area and at various hotels, including the Ramada

5

Inn located at 630 Franklin Road and a Masters Inn on Windy Hill Road. (PSR at ¶12.) King and Murray split J.B.'s earnings. (PSR at ¶16.)

Branch acted as Murray and King's driver (PSR at ¶¶ 12, 16.) Branch drove J.B. to and from the Ramada Inn to Fulton Industrial Boulevard. (PSR at ¶¶ 12, 16.) Murray and King used online advertisements posted on *Backpage*, an internet website, depicting J.B. and King's girlfriend, M.M.. (PSR at ¶ 16.) King and Murray used the website to solicit clients for J.B.. (PSR at ¶16.) M.M. was in charge of setting up clients for J.B. and herself. (PSR at¶ 16.)

## IV.
## ARGUMENT AND CITATIONS OF AUTHORITY

A. **THE COURT SHOULD IMPOSE A BASE OFFENSE LEVEL OF 30 UNDER SECTION 2G1.3(a)(2) OF THE GUIDELINES BASED ON THE SUBSTANTIVE OFFENSE CONDUCT.**

The Court should calculate Branch's base offense level for a violation of Title 18, United States Code, Section 1594(c), based on the underlying conduct of the offense pursuant to Section 2X1.1 of the Guidelines. In this case, Branch completed the acts that constitute a substantive offense of minor sex trafficking under Title 18, United States Code, Sections 1591(a)(1) and (b)(2). His base offense level, therefore, should be 30 pursuant to U.S.S.G. Section 2G1.3(a)(2).

Branch pleaded guilty to a conspiracy charge under Section 1594(c) in violation of the underlying offense of sex trafficking of minors under Title 18, United States Code, Section 1591(a)(1).  According to U.S.S.G. Section 2X1.1(a), the base offense level for a conspiracy violation is "from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."  Section 2X1.1(c)(1) provides that this is so unless a "conspiracy is <u>expressly</u> covered by another offense guideline section . . . ."  (emphasis added).

There is no specific offense guideline that "expressly" covers a Section 1594 offense.  In fact, Section 1594 is not even included in Appendix A of the Guidelines manual.  Nor does the "Statutory Provisions" section of the commentary at Section 2G1.3 reference a Section 1594 violation.  As a result, Branch should be sentenced under U.S.S.G. Section 2X1.1, which provides that the base offense level is "from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."  U.S.S.G. § 2X1.1(a).  The "substantive offense" is defined by the commentary at Section 2X1.1, cmt. n.2, as "the offense that the defendant was convicted of conspiring to commit."  In this case, the substantive offense underlying the conspiracy is Title 18, United States Code,

Sections 1591(a)(1) and (b)(2). The relevant U.S.S.G. provision for this substantive offense is Section 2G1.3(a)(2), which implements a base offense level of 30.

While as a result of the plea agreement Branch was convicted of a Section 1594(c) offense, his conspiracy conviction is sufficient to reach the offense of conviction language for a "substantive offense" as defined under Section 2X1.1 cmt. n.2. This precise issue was considered by another district court in *United States v. Li*, 2013 WL 638601 (D. N. Mar. I. 2013), where the Court held that the base offense levels at Section 2G1.3 should be applied to a Section 1594(c) conspiracy conviction resulting from Section 1591 conduct. *Id.* at 3. The *Li* Court reasoned that the commentary to Section 2X1.1, stating that the "base offense level will be the same as that for the substantive offense," as well as the conduct-based approach of the Sentencing Guidelines, "compel[s] the conclusion" that such an application is required. *Id.*

Additionally, undersigned counsel for the Government consulted with colleagues in other districts who have confronted the issue concerning the base offense level for a Section 1594(c) conviction. We learned that the following districts have also applied the underlying base offense levels at Sections 2G1.1 and 2G1.3 for a Section 1594(c) conviction: *United States v. Cortes-Castro*, 511 F.

8

App'x 942, 943-44 (11th Cir. 2013) (per curiam) (referencing the use of Section 2G1.1(a)(1) as the base offense level for the defendants' Section 1594(c) conviction (Southern District of Florida)); *United States v. Bonifacio*, criminal case no. S14 13-CR-31-02-KBF (Southern District of New York, May 30, 2014); and *United States v. Singh*, criminal case no. CR-11-00883-1-PJH (Northern District of California, April 18, 2012).

And while under Section 2X1.1(b)(2) a conspiracy charge may involve a decrease by three levels, in this case Branch "completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense."  Specifically, Branch acted as Murray and King's driver.  He transported J.B. to and from the Ramada Inn to Fulton Industrial Boulevard for prostitution in May 2012. Branch knew King's girlfriend, "Teka", posted internet advertisements to obtain clients for J.B..  And Branch observed Murray and King split the money earned by J.B. from the illicit sexual acts.

Under Section 2X1.1(b)(2), therefore, no decrease is warranted because Branch committed the acts that form the basis of the underlying substantive conduct.  The Court, accordingly, should calculate a base offense level of 30 for Branch under Section 2G1.3(a)(2).

B. **THE COURT SHOULD NOT IMPOSE A TWO-LEVEL ENHANCEMENT OF BRANCH'S BASE OFFENSE LEVEL UNDER U.S.S.G. SECTION 2G1.3(b)(2)(B) FOR UNDUE INFLUENCE OF A MINOR BECAUSE HIS ROLE IN THE OFFENSE WAS LIMITED ENOUGH TO SUPPORT A FOUR-LEVEL REDUCTION FOR A MITIGATING ROLE UNDER U.S.S.G. SECTION 3B1.2(a).**

Second, the Government objects to the imposition of a two-level enhancement of Branch's base offense level for undue influence of a minor under Section 2G1.3(b)(2)(B), as applied in Paragraph 25, and elsewhere, of the PSR. Section 2G1.3(b)(2)(B) of the Guidelines provides for a two-level increase "[i]f a participant . . . unduly influenced a minor to engage in prohibited sexual conduct." *Id.* Application Note 3(B) of Section 2G1.3(b)(2)(B) states that, "[i]n a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption" that the guideline provision applies. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and minor." U.S.S.G. § 2G1.3((b)(2)(B). cmt. n.3(B).

The enhancement also advises courts to "closely consider the facts of [a] case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." U.S.S.G. § 2G1.3((b)(2)(B). cmt. n.3(B). A "participant" for purposes of this specific offense characteristic is defined as "a

person who is criminally responsible for the commission of the offense." *See* U.S.S.G. §§ 2G1.3. cmt. n.1; 3B1.1. cmt. n.1(A).

Here, while Branch is certainly a participant for purposes of Section 2G1.3(b)(2)(B), his role in the offense was especially limited, as the minor victim acknowledged to law enforcement officers. As outline above, Branch's role consisted solely of him driving J.B. to locations where Murray and King caused J.B. to engage in prostitution. Branch did not drive J.B. when she engaged in acts of prostitution at highway truck stops or on Fulton Industrial Boulevard. Of equal importance is the fact that Murray and King split the money earned by J.B.. But Branch received very little of the proceeds and, by J.B.'s own recollection, he interacted very little with her during the crimes for which the defendants pleaded guilty. As a result, as part of Branch's plea agreement, the Government agreed to recommend that he receive a four-level departure for his minimal role in the offense under Section 3B1.2(a) of the Guidelines. (Doc. 70 at 13.)

For these reasons, the Government objects to the two-level enhancement for exercising undue influence of a minor under Section 2G1.3(b)(2)(B). The Government recognizes, however, that, as the probation officer notes in the PSR, this Guideline provision refers only to an offense where a "participant" exercised undue influence of a minor. U.S.S.G. § 2G1.3(b)(2)(B). Because Murray and King

are certainly participants who exercised undue influence of a minor, the Government understands that the Court may disagree with the parties' position.

**C. THE COURT SHOULD IMPOSE A TWO-LEVEL ENHANCEMENT OF BRANCH'S BASE OFFENSE LEVEL UNDER U.S.S.G. SECTION 2G1.3(b)(3)(B) BECAUSE THE OFFENSE INVOLVED USE OF A COMPUTER OR COMPUTER SERVICE TO SOLICIT PERSONS TO ENGAGE IN COMMERCIAL SEX ACTS WITH A MINOR.**

Third, the Court should apply an enhancement of Branch's base offense level for use of a computer or interactive computer service to solicit clients for a minor under Section 2G1.3(b)(3)(B) of the Guidelines.  Branch admits that Murray and King used online advertisements of the minor, J.B., on *Backpage*, an internet website, to obtain commercial sex clients for J.B. – conduct that he aided and abetted.  Therefore, the enhancement should be applied.

The specific offense characteristic at Section 2G1.3(b)(3)(B) of the Guidelines applies where the offense involved use of a computer or interactive computer service to "entice, encourage, offer or solicit a person to engage in prohibited sexual conduct with the minor."  Under the Guidelines, a "computer" includes a cellular phone.  *See United States v. Kramer*, 631 F.3d 900, 902-03 (8th Cir. 2011) (defining a cell phone as a computer for purposes of the Guidelines, pursuant to 18 U.S.C. § 1030(e)(1)); U.S.S.G. § 2G1.3. cmt. n.1 (defining "computer" as having the meaning given to the term in 18 U.S.C. § 1030(e)(1)).

It is true, however, that Section 2G1.3(b)(3)(B) includes an application note – Application Note 4 – that states that Subsection (b)(3) "is intended to apply only to the use of a computer or an interactive computer service *to communicate directly with the minor or with a person who exercises custody, care, or supervisory control of the minor*."  The meaning of this application note is clearly inconsistent with the plain meaning of the sentencing provision at Section 2G1.3(b)(3)(B) which, simply and unambiguously, states that the enhancement applies where "the offense involved use of a computer or an interactive computer service" to "entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with a minor."  U.S.S.G. § 2G1.3((b)(3)(B).  But the evidence in this case satisfies the wording of both the Guideline as well as the application note.

Moreover, the sentencing enhancement makes no mention of a defendant's or a participant's use of a computer or computer interactive service but, instead, refers only to whether the offense involved such usage.  *See* U.S.S.G. § 2G1.3(b)(3)(B); *see also United States v. Royal,* 442 F. App'x 794, 798 (4th Cir. 2011) (finding that the "enhancement applies even if a defendant did not personally use the computer since the enhancement 'makes no mention of the defendant, but focuses on the mechanism involved in the offense.") (quoting *United States v. Dotson*, 324 F.3d 256, 259 (4th Cir. 2003)).

13

In *United States v. Royal*, the Fourth Circuit found that the district court properly applied the enhancement in a sex trafficking prosecution even where the defendant, through a third party, used the internet to solicit unlawful sexual activity with a minor. 442 F. App'x at 798-99. The defendant in *Royal* objected to the application of the enhancement, arguing that he had not directly communicated with the minor using a computer or interactive computer device. *Id.* at 799. The Fourth Circuit rejected that argument, finding that the enhancement was properly applied where "a computer 'facilitated' a minor's engage[ment] in prohibited sexual conduct." *Id.* (quoting *United States v. Lay*, 583 F.3d 436, 447 (6th Cir. 2009)). The *Royal* Court concluded that the "enhancement applies even if a defendant did not personally use the computer since the enhancement 'makes no mention of the defendant, but focuses on the mechanism involved in the offense." *Id.* at 798 (quoting *United States v. Dotson*, 324 F.3d 256, 259 (4th Cir. 2003)).

Likewise, in *United States v. Winbush*, 524 F. App'x 914 (4th Cir. 2013), the Fourth Circuit applied the enhancement in a child exploitation case where one of the defendant's adult prostitutes posted online advertisements of the minor victim used to recruit customers for the girl. *Id.* at 915-16. The Fourth Circuit found that the district court properly applied the sentencing enhancement at

14

Section 2G1.3(b)(3)(B) because the adult prostitute, "working in concert with [the defendant], used a computer to advertise the minor on the internet and solicit customers for her." *Id*. at 916. Such conduct, the Court concluded, "fell squarely within the ambit" of the Guideline, notwithstanding the "inconsistent" language included at Application Note 4 of the Guideline. *See* U.S.S.G. § 2G1.3. cmt. n.4.

Application Note 4 of Section 2G1.3(b)(3)(B) states that Subsection (b)(3) "is intended to apply only to the use of a computer or an interactive computer service to communicate directly with the minor or with a person who exercises custody, care, or supervisory control of the minor." The meaning of this application note is clearly inconsistent with the plain meaning of the sentencing provision at Section 2G1.3(b)(3)(B) which, simply and unambiguously, states that the enhancement applies where "the offense involved use of a computer or an interactive computer service" to "entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with a minor." U.S.S.G. § 2G1.3((b)(3)(B).

In *United States v. Madkins*, 390 F. App'x 849 (11th Cir. 2010), the Eleventh Circuit noted that a "persuasive case has been made that the commentary [at U.S.S.G. § 2G1.3. cmt. n.4] is at odds with the plain language" of Section 2G1.3(b)(3)(B). *Id*. at 852. In *Madkins*, a defendant convicted of child sex trafficking placed ads of the minor victims on *Craigslist*, an internet website. But

15

nothing in the record indicated that the defendant had used a computer or interactive computer service to "communicate directly" with the minors or "a person who exercised care or custody of them", as the application note provides. *Id*. at 851. The Court, therefore, observed that the district court had "arguably" erred in applying this enhancement. *Id*. at 851.

However, nothing in the Guideline or in the application note states that the enhancement requires a showing that a defendant or participant must directly participate in the communication or computer usage. The enhancement only requires proof that <u>the offense</u> involved the prohibited use. Pointedly, the *Madkins* Court chose to decide the defendant's challenge to his sentence on the narrower issue of whether the district court would have imposed a different sentence but for the court's application of the enhancement at Section 2G1.3(b)(3)(B). *Id*. The Court then affirmed the sentence. *Id*.

In sum, Section 2G1.3(b)(3)(B) is incomprehensible if read to require that it applies only if a defendant, or other person exercising care or control of the minor, communicated directly with the minor. The plain language of the enhancement states that it applies to an offense involving use of a computer or an interactive computer service to "entice, encourage, offer, or solicit <u>a person</u> to engage in prohibited sexual conduct with a minor." U.S.S.G. § 2G1.3((b)(3)(B).

16

(emphasis added). The commentary, accordingly, is clearly at odds with the plain language of the enhancement, as the Eleventh Circuit suggested in *Madkins*, and as the Fourth Circuit found in *Winbush*. The Court, for these reasons, should apply the sentencing enhancement as the PSR recommends.

## V.
## CONCLUSION

For all these reasons, the Court should calculate a base offense level of 30 in Branch's case pursuant to United States Sentencing Guidelines Sections 2X1.1 and 2G1.3(a)(2), as the Pre-sentence Report now provides. Second, Branch's sentence should not be enhanced for undue influence of a minor under Section 2G1.3(b)(2)(B). Third, the Court should award him a downward departure of four levels under Section 3B1.2(a) of the Guidelines because his role in the offense was that of a minimal participant. Finally, the Court should apply a two-level enhancement for use of a computer to solicit persons to engage in unlawful sex acts with a minor under Section 2G1.3(b)(3)(B).

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


*/S/RICHARD S. MOULTRIE, JR.*
RICHARD S. MOULTRIE, JR.
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 527275


*/S/PHYLLIS CLERK*
PHYLLIS CLERK
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 095325

600 U.S. Courthouse
75 Spring St., SW
Atlanta, GA  30303
404/581-6280 (Tel.)
404-581-6156 (Fax)

CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that the foregoing document was formatted in accordance with Local Rule 5.1C in Book Antiqua font, 13-point type. This is to also certify that the undersigned has this date filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record:

>Jeffrey Ertel, Esq.
>101 Marietta Tower, Suite 1500
>Atlanta GA  30303

This 28th day of July, 2014.

>*/s/Phyllis Clerk*
>Phyllis Clerk
>Assistant U.S. Attorney
>Phyllis.Clerk@usdoj.gov