IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>FABIAN TERRAN MURRAY | Criminal Action No.<br><br>1:12-CR-00285-WSD;<br>1:12-CR-00286-WSD |

**United States' Sentencing Memorandum**

Comes now the United States of America, by John A. Horn, Acting United States Attorney, and Phyllis Clerk and Richard S. Moultrie, Jr., Assistant United States Attorneys for the Northern District of Georgia, and submits the following Sentencing Memorandum to address certain applications of the United States Sentencing Guidelines regarding Defendant Fabian Terran Murray. The Court should apply a two-level enhancement for undue influence of a minor under Section 2G1.3 (b)(2)(B), and a two-level increase based on the Defendant's role in the offenses under Section 3B1.1(c) (and therefore, deny his request for a reduction for minor role). The Court should also deny the Defendant a three-level downward adjustment under Section 3E1.1. In a post-plea letter to this Court, and in a *pro se* filing with the Court, the Defendant denied his criminal conduct.

**I.**
**<u>Introduction</u>**

The Court should apply a two-level enhancement for undue influence of a minor under Section 2G1.3(b)(2)(B). As an initial matter, Defendant Fabian

1

Terran Murray ("Murray") was at least 10 years older than 14-year-old O.M. at the time of the offense charged in Count Three of criminal case number 1:12-CR-285, to which he pled guilty.  Thus, under Section 2G1.3 (b)(2)(3), Application Note 3(B), a rebuttable presumption exists that Murray's exerted undue influence over O.M. and compromised her voluntariness.   And given the facts of this case that evince Murray's abuse of superior knowledge, influence and resources as compared to O.M., he cannot overcome this presumption.  Murray knew that O.M. (like A.C.) was a runaway at the time of the offense and, therefore, especially vulnerable.  Murray and Joshua Hill ("Hill") housed O.M. with A.C. at an extended stay hotel where they caused the girls to engage in commercial sex acts by creating and using internet ads of the girls.  Murray and Hill kept the bulk of the girls' earnings, sharing only a small portion of the proceeds with Clinton Saintvil ("C. Saintvil").  O.M. and A.C. received nothing.  Murray and Hill had sex with O.M. and A.C. to groom the girls for commercial sex, and so "they would know they belonged to them."  The Court should find, therefore, that Murray exercised undue influence over O.M.

   Similarly, Murray exercised undue influence over 16-year-old J.B. in criminal case number 1:12-CR-286.  At the time of the offense, Murray was 9 years older than J.B., just three months shy of the 10-year year age gap between J.B. and him that would have triggered the rebuttable presumption of undue influence under the Guidelines.  But this age difference remains significant enough to warrant this Court's consideration of that fact in weighing other factors that demonstrate Murray's undue influence of J.B.  Murray and Richard King ("King") caused J.B.

to commit commercial sex acts by housing her at a Ramada Inn and other locations.  At the time, Murray knew that J.B. was a runaway from New York, making her especially vulnerable.

The Court should also enhance Murray's base offense level for his role in both cases as an organizer, manager, leader or supervisor under Section 3B1.1(c).  In both cases: (1) Murray obtained the hotel rooms where he housed O.M., A.C., and J.B. for prostitution; (2) Murray purchased condoms for the girls to use during the commercial sex acts; (3) Murray used drivers to transport the girls to locations for commercial sex; and (4) Murray kept the bulk of the girls' earnings, sharing only a small portion with his drivers, C. Saintvil King and Jonathan Branch ("Branch"). For these reasons, the Court should apply a two-level role enhancement for Murray, and deny his request for a downward departure for a minor role.

Finally, the Court should deny Murray a three-level downward adjustment for acceptance of responsibility under Section 3E1.1.  Following his guilty plea, Murray, on or about September 22, 2014, wrote the Court to challenge the evidence of his crimes regarding O.M. and A.C. in criminal case number 1:12-CR-285.  In his letter, he claimed that he belatedly discovered that the Government purposefully withheld critical evidence that should be admitted at a trial.  Later, on December 3, 2014, he filed a *pro se* motion insisting that he was innocent of the charges here.  Murray's conduct is inconsistent with acceptance of responsibility; so the Court should deny him a downward departure under Section 3E1.1.

## II.
## Procedural Background

**A.  Indictment and Guilty Plea (Criminal Case No. 1:12-cr-285).**

On August 28, 2012, a grand jury seated in the Northern District of Georgia returned an indictment charging Murray, along with Hill and Saintvil, and aided and abetted by each other and C. Saintvil's wife, Nicole Saintvil ("N. Saintvil") (an unindicted co-conspirator), with conspiracy to commit child sex trafficking of O.M. and A.C., in violation of Title 18, United States Code, Section 1594(c), and substantive counts of child sex trafficking, in violation of Title 18, United States Code, Section 1591(a)(1). (Doc. 1.) On April 18, 2014, Murray pleaded guilty to child sex trafficking of O.M. as alleged in Count Three of a second superseding indictment. (Docs. 201, 326.)

**B.  Indictment and Guilty Plea (Criminal Case No. 1:12-cr-286).**

On August 28, 2012, the same grand jury returned an indictment charging Murray, along with King and Branch, aided and abetted by each other and M.M., King's girlfriend (an unindicted co-conspirator), with the offenses of conspiring to commit, and commission of, sex trafficking of J.B., in violation of Title 18, United States Code, Sections 1594(c), 1591(a)(1), and 2. (Doc. 1.) On April 18, 2014, Murray pleaded guilty to conspiracy to commit child sex trafficking as alleged in Count One of a superseding indictment. (Docs. 115, 140.)

**C.  The Pre-sentence Report.**

On April 1, 2015, the United States Probation Office issued its Final Pre-sentence Investigation Report ("PSR"). (PSR.) The PSR relied upon the 2014

4

edition of the United States Sentencing Guidelines Manual ("U.S.S.G." and the "Guidelines"). (PSR at ¶ 53.) As to each of the three minor victims in the case, the PSR determined that the applicable sentencing guideline was Section 2G1.3(a)(2), in connection with Section 2X1.1, and that Murray's base offense level was 30. (PSR at ¶¶ 54, 74). The probation officer's recommendation included an upward adjustment of two levels for undue influence of a minor under Section 2G1.3(b)(2)(B).  (PSR at ¶¶ 55, 75); an upward adjustment of two levels because Murray's offenses involved a commercial sex act under Section 2G1.3(b)(4)(B). (PSR at ¶¶ 57, 78); an upward adjustment of two levels because the offenses involved the use of a computer to solicit persons to engage in prohibited sexual conduct with minors under Section 2G1.3(b)(3)(B). (PSR at ¶¶ 56, 77); and a two-level upward adjustment for role in the offenses under Section 3B1.1(c). (PSR at ¶¶ 61, 81).  The PSR also determined that Murray's Criminal History Category is IV. (PSR at ¶ 102).  The resulting adjusted offense level was 38. (PSR at ¶¶ 73, 83).

   The PSR then applied an upward adjustment of three levels under Section 2G1.3(d), Part D (Multiple Counts), because the offense involved three minors. (PSR at ¶¶ 69, 84-90).  Finally, the probation officer amended the PSR to withdraw an earlier recommendation for a three-level downward departure for acceptance of responsibility under Sections 3E1.1 (a) and (b), based on Murray's failure to accept responsibility.  The resulting adjusted total offense level was 41. (PSR at ¶ 92).

## III.
## Brief Statement of the Cases

### A. Conduct Related to O.M. and A.C.

On February 19, 2012, O.M. and A.C. were two 14-year-old girls who ran away from a residential care center for children in state custody. (PSR at ¶ 20). On February 20, 2012, O.M. and A.C. met Murray, Hill, and C. Saintvil, at Fair Oaks Park in Marietta, Georgia. (PSR at ¶ 20). Earlier that day, Hill called C. Saintvil to ask C. Saintvil to use his wife's (N. Saintvil) car to pick up the girls. (PSR at ¶ 37). C. Saintvil knew that Hill and Murray planned to cause the girls to engage in prostitution. (PSR at ¶ 37). C. Saintvil agreed to drive Hill and Murray to the park to pick up the girls, and the men did so with Hill driving. (PSR at ¶¶ 20, 37).

The men drove O.M. and A.C. to a nearby gas station where Murray and Hill purchased condoms while C. Saintvil waited with the girls in the car. (PSR at ¶¶ 21, 37). They then drove to the Extended Stay America hotel at 1967 Leland Drive, Marietta, Georgia, where Murray and Hill rented a room, while C. Saintvil again remained in the car with the girls. (PSR at ¶ 21.) O.M. asked C. Saintvil what she and A.C. would be doing, and he told them prostituting. (PSR at ¶¶ 21, 37). Hill paid C. Saintvil for the ride by giving C. Saintvil $5.00 and an amount of marijuana. (PSR at ¶ 37). C. Saintvil then left the hotel. (PSR at ¶ 38).

Once inside the hotel room, Murray and Hill had sex with O.M. and A.C. and took nude photographs of them on Hill's cellular phone. (PSR at ¶¶ 22, 38). Hill used the phone to send these photographs to C. Saintvil and N. Saintvil. (PSR at ¶¶ 22, 38). N. Saintvil responded by telling Hill to take additional photos of

6

O.M. and A.C. in their bras and underwear so that N. Saintvil could post the photographs on Backpage, a service providing free classified advertisements online. (PSR at ¶ 14.) N. Saintvil posted the photographs in *Backpage* ads for Murray and Hill, listing the ages of O.M. and A.C. as 18 years. (PSR at ¶ 22)  Hill paid N. Saintvil $9.00 for posting the advertisement. (PSR at ¶ 40).

Between February 20 and 22, 2012, Murray and Hill, with the help of C. Saintvil and N. Saintvil, offered O.M. and A.C. to clients for sexual acts. (PSR at ¶ 23).  During this time, O.M. and A.C. told Murray and Hill that they were minors. (PSR at ¶¶ 23, 28, 30).  In fact, on one occasion, O.M. took a phone call from a customer who responded to the girls' advertisement and inadvertently told the caller that she was underage. (PSR at ¶ 28.) The caller ended the call, after which Hill – who with Murray and A.C. had been present during the incident – told O.M. to tell clients that she was 18 years old. (PSR at ¶ 28).  Hill also told the girls what fees to charge. (PSR at ¶¶ 27, 30).  O.M. and A.C. had two clients at the hotel, for which they were paid approximately $500, and one at a condominium in Midtown Atlanta, for which they received approximately $500. (PSR at¶¶ 28, 30).  Hill required that the young women give him all of their earnings. (PSR at ¶ 23).

On the occasion that O.M. and A.C. traveled to the condominium, Hill again telephoned C. Saintvil to request a ride. (PSR at ¶ 23). Hill, C. Saintvil, and N. Saintvil drove the girls to the condominium. (PSR at ¶ 23).  Murray and Hill earned $500 from the girls' date at the condominium. (PSR at ¶ 23) Murray and Hill split the proceeds and each paid C. Saintvil $20.00 each for the use of his car.

7

(PSR at ¶ 38).  Cobb County, Georgia, law enforcement officers discovered the girls at the Extended Stay Hotel on February 22, 2012, and took them into custody. (PSR at ¶ 25).

During a search of the hotel room, the officers recovered numerous items, including a firearm and condoms. (PSR at ¶ 25).  The investigators also obtained the cell phone that Hill had given to O.M. for use in contacting clients, as well as a receipt for the hotel room in Hill's name. (PSR at ¶ 25).  A search of the cell phone revealed the nude and partially-clothed photographs of O.M. and A.C. used in the *Backpage* ads. (PSR at ¶ 25).

## B.  Conduct Related to J.B.

 In late May 2012, J.B. met Murray, King and Branch after leaving the custody of New York's Adult and Children Services. (PSR at ¶¶ 45, 49).  J.B. had come to Atlanta, Georgia, from South Carolina with a man named "Blue" who began sex trafficking J.B. in the Marietta and Smyrna, Georgia, areas. (PSR at ¶ 44).  Murray and King took J.B. to a Ramada Inn in Marietta, Georgia, and subsequently to an apartment complex on Six Flags Drive in Austell, Georgia. (PSR at ¶¶ 46, 50).  After arriving at the apartment, Murray bought J.B. provocative clothing and told her she would be working for him as a prostitute. (PSR at ¶ 46).  Next, Murray and King used internet ads, posted by M.M. – unindicted co-conspirator– to solicit clients for J.B. (PSR at ¶ 50).

Murray and King then caused J.B. to commit sex acts on Fulton Industrial Boulevard, at an interstate highway truck stop area and at various hotels, including the Ramada Inn located at 630 Franklin Road and a Masters Inn on

Windy Hill Road. (PSR at ¶ 46).  Murray and King utilized Branch to drive J.B. to and from Ramada Inn to Fulton Industrial Boulevard to perform commercial sex acts. (PSR at ¶¶ 46, 50).  (PSR at ¶¶ 47, 50). Murray and King split J.B.'s earnings. (PSR at ¶ 50).

## IV.
## Argument and Citation of Authority

### A. Murray unduly influenced a minor under U.S.S.G. Section 2G1.3(b)(2)(B).

The Court should enhance Murray's base offense level for undue influence of a minor under Section 2G1.3(b)(2)(B) of the Guidelines, as applied in Paragraphs 55 and 65 of the PSR.  Specifically, as it relates to criminal case number 1:12-cr-285, Murray is at least 10 years older than O.M.  So a rebuttable presumption under Section 2G1.3(b)(2)(B), Application Note 3(B), exists that Murray's influence over O.M. compromised her voluntariness.  And while Murray is only 9 years older than J.B., this age difference is significant enough for the Court to consider it in weighing all the factors in deciding whether to apply the enhancement regarding J.B.

Section 2G1.3(b)(2)(B) provides for a two-level increase "[i]f a participant . . . unduly influenced a minor to engage in prohibited sexual conduct." *id.* Application Note 3(B) states that, "[i]n a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption" that the guideline provision applies.  "In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant

and minor." U.S.S.G. 2G1.3(b)(2)(B). cmt. n.3(B).  The enhancement also advises courts to "closely consider the facts of [a] case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." U.S.S.G. § 2G1.3((b)(2)(B). cmt. n.3(B). A "participant" is defined as "a person who is criminally responsible for the commission of the offense." U.S.S.G. § 2G1.3. cmt. n.1; 3B1.1. cmt. n.1(A).

In deciding whether a defendant's conduct resulted in undue influence, a sentencing court "may look to a variety of factors, including whether [the defendant] display[ed] an abuse of superior knowledge, influence and resources." *United States v. Jones*, 546 F. App'x 946, 947-48 (11th Cir. 2013) (citing *United States v. Root*, 296 F.3d 1222, 1234 (11th Cir. 2002) (internal quotation marks omitted); *United States v. Harrison*, 535 F. App'x 829, 831-32 (11th Cir. 2013).  In *Jones*, the Eleventh Circuit concluded that a 19-year-old defendant had exercised undue influence of the minor victims – ages 12, 14, and 15 years – by purchasing hair care products, jewelry, and makeup for them; persuading the 15-year-old girl that he loved her; keeping the minors' earnings; controlling the fees that they charged and the phones that they used for scheduling their dates; and beating them. 546 F. App'x at 948-47.  The Court concluded that the defendant had used "affection, control, and physical violence to influence the minors to work for him." *Id*. The Court also approved application of the enhancement under circumstances in which there was as little as only four years between the defendant's age and that of the 15-year-old minor. *Id*.

In *Harrison*, the Eleventh Circuit found that the defendant had evinced undue influence of a minor victim through use of his "superior knowledge" and "superior resources." 535 F. App'x at 831-32. The Court determined that the defendant's abuse of his superior knowledge was reflected by his: (1) knowledge of computers and use of the internet to create ads depicting the victim; (2) directions to the victim on how to answer the phone and the fees to charge clients; (3) instructions to the victim on where to take customers at the motels where he exploited her. *Id*. at 831. The Court reasoned that the defendant demonstrated an abuse of superior resources by his use of a laptop computer to advertise the victim; payment of the internet ads; purchase of items for the victim, including condoms; and transporting the victim from her home to locations where she engaged in prostitution. *Id*.

Additionally, the Eleventh Circuit has previously determined that evidence that a minor victim engaged in commercial sex acts prior to or after meeting a defendant is not a fact that forecloses application of this enhancement.  *See Jones*, 546 F. App'x at 947-48 (applying the enhancement despite evidence that the minor victims had previously engaged in prostitution); *United States v. Madkins*, 390 F. App'x 849, 850-51 (11th Cir. 2010) (finding that the district court in a Section 1591(a) prosecution correctly enhanced a defendant's advisory sentencing guidelines range for undue influence of a minor despite the defendant's objections that the minors engaged in prostitution for pecuniary gain).

Here, the record establishes that Murray is presumed to have exercised undue influence over O.M.  Murray is at least 10 years older than O.M.  Under Section

2G1.3 (b)(2)(3), accordingly, the Court is authorized to presume that such undue influence existed.   But even in the absence of this presumption, the facts here establish that Murray abused his superior knowledge, influence and resources to compromise O.M.'s voluntariness because he:

- Knew that O.M. was a runaway at the time of the offense and, therefore, especially vulnerable;  (PSR at ¶¶ 20, 37);

- Along with Hill, housed O.M. at an extended stay hotel where he caused her to engage in commercial sex acts and was able to exert  a level of control over her; (PSR at ¶¶ 21, 22, 37);

- Groomed O.M. for commercial sex by having sex with O.M. and A.C.; (PSR at ¶¶ 22, 36);

- Used internet ads that Hill and he created to advertise O.M. with A.C. for commercial sex; (PSR at ¶¶ 22, 27, 30); and

- Retained O.M.'s earnings, giving only a small portion to C. Saintvil. (PSR at ¶ 38).

Taken together, these facts support the probation officer's application of this enhancement concerning O.M.  Likewise, the record supports application of the enhancement regarding J.B. in criminal case number 1:12-CR-286.

While Murray is 9 years older than J.B. – rather than the requisite 10 years to trigger the rebuttable presumption under Section 2G1.3(b)(2)(B) – the Court should still weigh this significant age difference between Murray and J.B. as a factor that supports application of the undue influence enhancement, as the PSR recommends.  The Eleventh Circuit has approved application of this enhancement in a case in which the age difference between the defendant and

the minor was as little as four years. *See Jones*, 546 F. App'x at 947-48. Together with Murray's significant age difference with J.B., other facts of the case demonstrate that Murray utilized superior resources in influencing J.B. to commit commercial sex acts, including that Murray:

- Knew that J.B. was a 16-year-old runaway when she met him; (PSR at ¶ 44);

- Bought J.B. provocative clothing; (PSR at ¶ 46);

- Kept J.B.'s earnings, splitting the proceeds with King; (PSR at ¶ 50.);

- Housed J.B. at a Ramada Inn, and other locations, where he and King could exert control over her; (PSR at ¶¶ 45, 49);

- Used Branch to drive J.B. to the locations where she engaged in prostitution; (PSR at ¶¶ 46, 50); and

- Had sex with J.B. during the criminal conduct. (PSR at ¶¶ 47, 50).

Consequently, during the time that J.B. was with Murray, he exerted a level of control over the girl that compromised her voluntariness. The Court should enhance Murray's offense level for this conduct as a result.

### B. Murray was an organizer, manager, leader, or supervisor of the offenses U.S.S.G. Section 3B1.1(c).

The Court should also impose a two-level enhancement of Murray's base offense level under U.S.S.G. Section 3B1.1(c) because he was an organizer, manager, leader, or supervisor of the offenses. Section 3B1.1 of the Sentencing Guidelines establishes a three-tier system for recognizing the aggravating role of certain defendants in criminal enterprises that involve more than one person.

13

U.S.S.G. § 3B1.1(a)-(c). The district court may enhance a defendant's sentence by two to four points depending upon the nature of the defendant's role in the criminal activity and the number of participants involved. U.S.S.G. § 3B1.1(a)-(c).

The district court may increase a defendant's base offense level by two points pursuant to Section 3B1.1(c) where a defendant was an organizer, leader, manager, or supervisor in the criminal activity, but where the scope of the criminal conduct did not involve five or more criminal participants (and was not otherwise extensive). U.S.S.G. § 3B1.1(c). This enhancement applies where a defendant manages or supervises "one or more participants." U.S.S.G. § 3B1.1, comment. n.2. Thus, application of section 3B1.1(c) requires the sentencing court to determine the role of the defendant in the criminal activity, and to consider the number of participants involved.

"The determination of the defendant's role in the offense is to be made on the basis of all conduct within the scope of U.S.S.G. § 1B1.3 (Relevant Conduct) . . . and not solely on the basis of elements and acts cited in the counts of conviction." U.S.S.G., Ch. 3, Pt. B, intro. comment. In assessing a defendant's leadership role, the district court may consider various factors, including the defendant's "exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control exercised over others." § 3B1.1, comment. n.4.

The assertion of control or influence over only one participant is sufficient to support a role enhancement as an organizer, manager, leader, or supervisor. *United States v. Williams*, 457 F. App'x 840, 842-43 (11th Cir. 2012) (*citing United States v. Glover*, 179 F.3d 1300, 1302 (11th Cir. 1999)); *United States v. Lozano*, 490 F.3d 1317, 1323 (11th Cir. 2007) (affirming an enhancement where the defendant instructed at least one coconspirator to engage in criminal conduct); *United States v. Flores-Sotelo*, 343 F. App'x 404, 409-10 (11th Cir. 2009) (applying enhancement where the defendant utilized a driver).

Here, the PSR included a two-level enhancement under section 3B1.1(c) for Murray's role as an "organizer, leader, manager, or supervisor" of the criminal activity. (PSR at ¶¶ 61, 71.  The probation officer recommended the upward adjustment based on Murray having "exercised decision-making authority" and having "directed others and claimed right to a larger share of the fruits of the crime." (PSR at ¶¶ 61, 71).

This enhancement is supported by the facts outlined in the PSR regarding criminal case number 1:12-cr-285, including Murray's:

- Exercise of decision-making authority, along with Hill, in renting the motel where the men housed O.M. and A.C. (PSR at ¶ 21);

- Exercise of decision-making authority, along with Hill, in posing O.M. and A.C. for photographs placed on the Internet; (PSR at ¶¶ 22, 27);

- Use of C. Saintvil and N. Saintvil to transport O.M. and A.C. for commercial sex; (PSR at ¶¶ 23, 38) and

- Role in paying C. Saintvil a share of O.M. and A.C.'s earnings (PSR at ¶¶ 37-38).

The enhancement is similarly supported by the facts in criminal case number 1:12-cr-286 with respect to J.B., which include Murray's:

- Exercise of decision-making authority, along with King, in renting the motel where the men housed J.B. (PSR at ¶¶ 45. 49);

- Exercise of decision-making authority, along with King, in using Branch to transport J.B. for commercial sex; (PSR at ¶¶ 46, 50); and

- Degree in organizing the criminal conduct by obtaining J.B.'s earnings and paying a share of them to King. (PSR at ¶ 50).

In *United States v. Robinson*, 508 F. App'x 867, 870 (11th Cir. 2013), the Eleventh Circuit affirmed the same enhancement in a case involving facts very similar to Murray's case. In *Robinson*, the Court found that the enhancement had been correctly applied based on the defendant's influence over an unindicted co-conspirator who assisted in photographing the minor and placing advertisements online for prostitution activities. *Id*. The Court also observed that the defendant utilized his co-conspirator to schedule appointments and to transport the minor to meet men for commercial sexual activities. *Id*. The Court also noted that the defendant controlled the proceeds derived from the exploitation of a minor. *Id*. In sum, the Eleventh Circuit agreed with the district court's observation that the defendant was "running the show." *Id*.

Here, the facts clearly show that Murray exercised decision-making authority. Murray obtained hotels for the minor girls to engage in commercial sex acts for money. Murray arranged for drivers to transport the girls to and from locations to engage in prostitution. Murray facilitated use of ads to obtain clients for the girls. And Murray, together with Hill (concerning O.M. and A.C.) and King

(regarding J.B.), managed and organized the criminal conduct by collecting earnings from the minors, and sharing the bulk of those funds with Hill and King.  The Court, as a result, should enhance Murray's sentence based on his leadership role under Section 3B1.1 (c).

### C. Murray's post-plea conduct disqualifies for a downward adjustment for acceptance of responsibility under U.S.S.G. Section 3E1.1.

Following his entry of a guilty plea, Murray, on or about September 22, 2014, wrote a letter to this Court raising doubts about the evidence related to his crimes against O.M. and A.C. in case number 1:12-CR-285 – even accusing the Government of purposely withholding exculpatory information.  (Docs. 402 at n.1, 1:120CR-285; 186 at n.1, 1:12-CR-286.)  Murray's letter was well written, particularly given that, only a short time earlier, he claimed to be suffering from a mental condition.  (*Id*. at 2.)  The Court convened a teleconference with the Government and former counsel for Murray. (*Id*. at n.1.)  During that conference, the parties confirmed to the Court that the evidence that Murray claimed the Government suppressed had, in fact, been produced in discovery.  Indeed, the material – contained on a compact disc – was the subject of a defense motion *in limine* to exclude.  (*Id*.)  Days later, in a *pro se* filing with the Court on December 3, 2014, Murray insisted that he was innocent of the charges here.  (Docs. 398, 1:12-CR-285; 183, 1:12-CR-286.)  Murray's post-plea conduct is inconsistent with an acceptance of responsibility.  So the Court should deny him a downward adjustment for acceptance under Section 3E1.1.

Section 3E1.1 provides for a downward adjustment in a defendant's offense level, "if the defendant clearly demonstrates acceptance of responsibility for his offense . . . ." USSG § 3E1.1(a).  According to Application Note 3 to Section 3E1.1,

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct compromising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under [USSG] § 1B1.3 . . . will construct significant evidence of acceptance of responsibility . . . [h]owever, *this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility*.  A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

USSG § 3E1.1, comment. n.3.(2001) (emphasis added).

"The determination of whether a defendant has adequately manifested acceptance of responsibility is a flexible, fact sensitive inquiry." *United States v. Smith*, 127 F. 3d 987, 989 (11th Cir. 1997).  "The defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea."  *United States v. Moriarty*, 429 F.3d 1012, 1023, (11th Cir. 2005) (quoting *United States v. Sawyer*, 180 F.3d 1319, 1323 (11th Cir. 1999)).

"[A] defendant who denies relevant conduct which the court finds to be true has acted in a manner inconsistent with the acceptance of responsibility."  *United States v. Diaz*, 138 F. 3d 1359, 1364 (11th Cir. 1998) (citing USSG §  3E1.1, comment. n.1(a)).  As noted in the commentary to USSG § 3E1.1 at Application Note 1(A), "a defendant is not required to volunteer, or affirmatively admit, relevant conduct . . . [but] a defendant who falsely denies or frivolously contests,

relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."  USSG § 3E1.1, comment. n. 1(a).

Under controlling authority in this Circuit, "a district court [may] deny a defendant a reduction under § 3E1.1 based on conduct inconsistent with acceptance of responsibility, even when the conduct includes the assertion of a constitutional right."  *Smith*, 127 F. 3d at 989.  Moreover, the district court "may consider the nature of [frivolous legal] challenges along with the other circumstances in the case when determining whether a defendant should receive a sentence reduction for acceptance of responsibility."  *Id.* (denial of defendant's request for reduction of responsibility properly could be based on his objections to pre-sentence report).

Here, Murray's plea agreement specifically provided that the Government is not required to recommend acceptance of responsibility if Murray engages in conduct inconsistent with accepting responsibility.  *See* Murray's Plea Agreement ("Murray's Agr.") at 5, ¶ 13.  The agreement even provides examples of conduct inconsistent with accepting responsibility, including should Murray "falsely deny or falsely attempt to minimize [his] involvement . . . ." *Id.*  The plea agreement specifically allows the Government to argue that acceptance should be denied, and that such a recommendation is not a violation of the plea agreement.  (Murray's Agr. at 6, ¶ 15).

Murray, by falsely claiming in his letter to the Court that the Government knowingly and purposely withheld critical evidence favorable to him – evidence which, in fact, was the subject of intense pretrial litigation – he has denied and

minimized his role in the offense.  Additionally, on December 3, 2014, Murray filed a *pro se* Motion to Dismiss and Replace Court Appointed Counsel.  (Docs. 398, 1:12-CR-285; 183, 1:12-CR-286.)  In his motion, Murray made multiple statements inconsistent with accepting responsibility: (1) "I don't recall taking nor [sic] desire to enter a plea;" (2) "I want to go to trial;" and (3) "I am innocent . . . ." (*Id.*)  Murray's conduct is inconsistent with an acceptance of responsibility under USSG § 3E1.1.  This Court, as a result, should deny him a downward departure for acceptance or responsibility.

## Conclusion

For all these reasons, the Court should apply a two-level enhancement for undue influence of a minor under Section 2G1.1 (b)(2)(B); a two-level increase based on role in the offense under Section 3B1.1(c); and deny any downward adjustment for acceptance of responsibility under Section 3E1.1.

Respectfully submitted,

JOHN A. HORN
  *Acting United States Attorney*


/s/RICHARD S. MOULTRIE, JR.
  *Assistant United States Attorney*
  Georgia Bar No. 527275
  Richard.Moultrie@usdoj.gov


/s/PHYLLIS CLERK
  *Assistant United States Attorney*
  Georgia Bar No. 095325
  Phyllis.Clerk@usdoj.gov

20

**Certificate of Service**

This to certify that the foregoing document was formatted in accordance with the Local Rule 5.1C in Book Antiqua font, 13-point type. This is to also certify that the undersigned has this date filed the foregoing pleadings with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record.

Akil Secret, Esq.

May 7, 2015

/s/PHYLLIS CLERK
_____

PHYLLIS CLERK

*Assistant United States Attorney*